FILED IN CHAMBERS
U.S.D.C. Rome

JAN 16 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

WILLIAM ALFRED ROBERTSON,

      Plaintiff,

v.

OFC. MR. BRYANT, OFC. MS. BUTLER, OFC. MS. GILLEY, SGT BOOLE, and OFC. MR. WILLIAMS,

      Defendants.

CIVIL ACTION

NO. 4:06-CV-10-RLV

O R D E R

This is an action pursuant to 42 U.S.C. § 1983, in which the plaintiff, an inmate currently incarcerated at Hancock State Prison, claims that the defendants violated his constitutional rights by using excessive force against him during a sequence of events that occurred while he was incarcerated at Hays State Prison on May 15-16, 2004. Specifically, the plaintiff asserts excessive force and failure to intervene claims. Pending before the court is the defendants' Motion for Summary Judgment [Doc. No. 36-1] and the plaintiff's Motion for Leave to Seek Discovery [Doc. No. 38]. For the reasons set forth below, the defendants' motion is GRANTED and the plaintiff's motion is DISMISSED as moot.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his or her claim on which he or she bears the ultimate burden of proof. Id. at 322-23. In order to determine whether a factual issue exists, a court must view the evidence in the light most favorable to the non-moving party. Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

Before analyzing the merits of the pending motion, the court must address the status of defendants Sgt. Boole and Officer Williams. These two individuals were named in the complaint as defendants along with Officers Bryant, Butler, and Gilley, but Boole and Williams have to date never been served, unlike their co-defendants. The complaint was filed on January 11, 2006, and

service was not perfected on Boole and Williams within 120 days of the filing of the complaint as is required under Fed. R. Civ. P. 4(m). Indeed, the plaintiff plainly conceded that defendants Boole and Williams have not been served [Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts, Doc. No. 41-3, ¶ 4], and he gives no reason for the failure. Consequently, it is appropriate to dismiss this action without prejudice as to Boole and Williams for failure to effect service of process.

FACTS

The facts in this case arise out of two incidents at Hays State Prison that occurred on May 15 and 16, 2004. The evidence presented by both parties establishes that there is no issue of material fact. Although the extent of each individual's actions during the two incidents is in dispute, when this court views the evidence in a light most favorable to the non-moving party, here the plaintiff, the inference in favor of the plaintiff is still insufficient to establish a constitutional violation. Thus, there is no issue of material fact, and summary judgment is appropriate.

In order to understand the context of claims before the court, it is important to bear in mind the plaintiff's prison record. After pleading guilty to aggravated assault, false imprisonment, and robbery by intimidation, the plaintiff eventually found himself incarcerated at Hays prison. While there, he received numerous Disciplinary Reports, in total approximately sixteen or seventeen reports for insubordination and exposure. Prior to the incidents

at issue here, the plaintiff was placed in segregation, i.e., Special Management Unit ("SMU"), for swearing at an officer. On May 16, 2004, the same day that the second incident in this case occurred, the plaintiff was found guilty by the Disciplinary Report court of two counts of masturbating to a female officer and one count of making a threatening gesture to an officer.

With respect to the two incidents of alleged excessive force, the first incident, on May 15, began when Officer Bryant smelled smoke coming from the plaintiff's cell. The plaintiff admits he was illegally smoking. Because the plaintiff's cell was located in a non-smoking prison unit, Bryant attempted to enter the plaintiff's cell to conduct an inspection. In order to conduct the inspection, Bryant attempted to place handcuffs on the plaintiff, as per prison policy, through the tray slot in the cell door. The plaintiff refused to be handcuffed and objected to Bryant entering his cell; the plaintiff alleges that at this point Bryant reached through the tray slot and slapped him. Then the plaintiff pushed Bryant's arm out of the window. Also, in order to deter a subsequent entry of his cell by a group of officers, the plaintiff spread baby oil on the front part of his cell floor while he remained on the dry, rear section of the floor.

Although the officers did not attempt entry at that point, the plaintiff admits that if they had, his intent was to physically resist and "push them out of my room." [Robertson Dep. 51:2-17, September 26, 2006.] The plaintiff did not file a grievance, and

4

no reports were taken. Additionally, he neither claimed any injuries nor sought any medical attention from the alleged slapping incident.

The second incident, on May 16, is the primary focus of the plaintiff's complaint. On that afternoon, after receiving the three Disciplinary Reports for exposure and making threatening gestures, the plaintiff submitted to a "clipper shave" and was escorted by Officer Butler down a flight of stairs to a barber chair in the common area. The plaintiff was restrained with wrist cuffs behind his back. Once he was sitting down in the common area, Officer Butler called to Officer Bryant, and they both proceeded to conduct a "shakedown" of the plaintiff's cell.[1] Apparently unhappy for having his cell disturbed, the plaintiff then stepped through his cuffs so that his hands were repositioned in front of his body. The plaintiff testified that he did this because he anticipated that he was "going to have a problem with [Officer Bryant]." [Robertson Dep. 63:20.]

Once officers Bryant and Butler finished the shakedown, they returned down the stairs to the common area. As they descended, the plaintiff jumped out of his chair and, anticipating a confrontation, yelled at the officers to "go on with that shit now." [Robertson Dep. 65:11.] At that point, Bryant and Butler

---

[1] The plaintiff alleges that just prior to Officers Bryant and Butler conducting the "shakedown," Officer Bryant verbally accosted him. However, the plaintiff also admits that he yelled back at the officer.

called for officer assistance. According to the plaintiff, the officers never gave him a verbal warning to desist (the defendants claim otherwise).

Responding to the assistance call within approximately one minute were Officer Gilley and Officer Williams, at which point Williams took the plaintiff to the floor. The plaintiff was apparently lying on his front. Officer Williams placed himself over the top half of the plaintiff's body to prevent him from moving or headbutting the officer, and meanwhile Officer Bryant placed himself over the plaintiff's legs to restrain his lower body. Officer Gilley then placed leg restraints on the plaintiff's ankles. Next, according to the plaintiff, Officer Williams punched him not more than two times in the face. The plaintiff admits that he was trying to move in order to avoid being punched. He denies trying to spit on or bite any of the officers. Shortly thereafter, Sgt. Boole instructed Williams to place the plaintiff in the shower, at which point the senior officer present began to conduct an investigation and ordered a "use of force" medical examination for the plaintiff.

The medical exam found that the plaintiff had sustained bruising around his left eye and the bridge of his nose, as well as pinched areas at his wrists from the handcuffs. [Graham Aff. Doc. No. 36-8, Attach. 1, at 2, October 17, 2006.] His skin was not broken, and he received no pain medication. [Robertson Dep. 83:13-23.]

## § 1983 CLAIMS

### EXCESSIVE FORCE

The Eighth Amendment prohibits cruel and unusual punishment and serves as the primary source of protection for prisoners against excessive force by penal officers. To establish an excessive force claim, the plaintiff must prove that the force was not "applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986). To determine whether the force was applied maliciously and sadistically to cause harm, a court considers a variety of factors, such as "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002).

### May 15

The plaintiff alleges that when Officer Bryant attempted to conduct a search of the plaintiff's cell on May 15, 2004, Bryant used excessive force on him by reaching through the tray slot and slapping him in the face. Notably, the plaintiff admits that he was impermissibly smoking in his cell and that he refused to consent to being handcuffed or allow a search of his cell. Moreover, the plaintiff did not complain of any injury and nor did he require any medical treatment for the alleged slapping incident.

7

The question before the court, therefore, is whether Officer Bryant's application of force on May 15, despite the fact that it resulted in no injury, was still excessive. Although it is true that minimal force can still be constitutionally excessive because significant injury is not necessarily the only evidence of excessive force, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9 (1992). A de minimis use of force will not rise to an excessive force claim as long as the use of force is not "repugnant to the conscience of mankind." Id. at 8-9. While the absence of any injury does not necessarily end an excessive force inquiry, evidence of a de minimis use of force alone, without any injury, is insufficient to establish an excessive force claim. Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996).

In this case, it is undisputed that the plaintiff suffered no injury. Moreover, from the plaintiff's refusal to submit to being handcuffed or having his cell inspected when he was discovered to have been impermissibly smoking, it is clear that the circumstances of Officer Bryant's alleged force against the plaintiff did not occur in a vacuum. Given the context of the situation, it is not repugnant to the conscience that at least some minimal force was used to attempt to enforce compliance with the officer's directions. Assuming that the plaintiff was slapped, the court finds that that force was, at the most, a de minimis force.

Therefore the plaintiff's claim must fail and summary judgment is warranted.

### May 16

Because the claims in this case have been dismissed against Sgt. Boole and Officer Williams, the court will examine only the actions of Officers Bryant, Butler, and Gilley on May 16, 2004, and determine whether the force used by each of these officers individually amounted to excessive force.[2]

### Officer Bryant

The claim of excessive force against Officer Bryant on May 16 arises out of his actions during the response to the officer assistance call. During this incident, just after Officer Williams took the plaintiff to the floor, Bryant lay across the plaintiff's legs in order to allow another officer to place leg shackles on the

---

[2] In Skrtich v. Thornton, 280 F.3d 1295 (11th Cir. 2002), the Eleventh Circuit rejected a similar analysis urged by the prison guard-defendants' argument that the force applied in a convict beating by each of them should be analyzed separately to determine which, if any, of the defendants' blows amounted to excessive force. In that case, though, the court's decision was based on the particular facts of that use of force. The court in Skrtich decided a collective analysis, instead of an individual analysis, was more appropriate because the "cell extraction team . . . acted in concert to administer the beating," 280 F.3d at 1302, which apparently occurred after the plaintiff-prisoner refused to submit to handcuffing and a search of his cell. In this case, however, the plaintiff does not allege or show that the defendants acted in concert. Rather, his claims are based on each individual defendant's conduct, namely, Officer Bryant's lying across the plaintiff's legs, Officer Butler's alleged encouragement of Bryant's actions, and Officer Gilley's placing of leg shackles on the plaintiff. Because the evidence does not show that the defendants acted in concert to administer the alleged excessive force applied to the defendant, the court will analyze their conduct and use of force separately.

plaintiff. The plaintiff claims that this use of force was excessive. However, this court concludes that the use of force was reasonable and necessary to restore order.

The plaintiff had been allowed out of his cell for the sole purpose of receiving a clipper-shave. Yet, while out of his cell, the plaintiff managed to reposition his handcuffed hands from behind his back to his front, he shouted to the officers to "go on with that shit now," and he had a recent history of resisting officer commands. Given these facts, and the short amount of time that transpired during the response to the officer assistance call, it was reasonable for Officer Bryant to physically restrain the plaintiff's legs while he was on the ground in order to allow another officer to place leg shackles on the plaintiff's ankles. The plaintiff presented himself as an increased threat to the officers and prison order when he contorted himself into a less restrained hand position than the guards had first placed him in (i.e., his hands were no longer cuffed behind his back), and when he stood out of the chair and began shouting at the officers. Consequently, the use of force by Officer Bryant was an appropriate escalation of force calculated to respond to the increased threat. It was not excessive and did not violate the plaintiff's constitutional rights. Moreover, the facts show that Bryant's use of force was applied only to resolve the immediate threat to safety and not as punishment for past misconduct. Therefore, it was a good faith application of force.

### Officer Butler

The excessive force claim against Officer Butler is not actually based on any use of force. The plaintiff's complaint alleges that Butler used excessive force when she allegedly called Officer Bryant and encouraged him to "taunt and provoke me." The plaintiff does not allege that Butler actually used any force at all, and the evidence shows that the extent of her involvement was to retrieve the leg shackles and assist Officer Gilley. Accordingly, her actions during this brief incident could not have amounted to excessive force.

### Officer Gilley

The excessive force claim against Officer Gilley is based on her actions in placing leg shackles on the plaintiff. Even though the plaintiff could not see who actually did place the shackles around his ankles, the evidence shows that it was Officer Gilley. However, that is the extent of her use of force. The claim that placing leg shackles on the plaintiff amounted to excessive force fails to survive close scrutiny. The plaintiff had already been restrained with handcuffs around his back. Once he managed to get his hands in front of him, which better enabled him to offensively strike the officers or another inmate, it was reasonable to escalate the physical restrictions on the plaintiff.

As part of the response to the officer assistance call, which lasted only a brief time and was prompted by the plaintiff's disorderly conduct, it was reasonable to place leg shackles on the

11

plaintiff's ankles. This use of force was not excessive given the circumstances. This court concludes that Officer Gilley's actions amounted to a good faith effort to restore order and temper the application of force to the increased threat posed by the plaintiff at that time.

Failure to Intervene

All three officers, Bryant, Butler, and Gilley, are alleged to have failed in their duty to intervene when Officer Williams allegedly punched the plaintiff in the face while he was on the ground during the May 16 incident. This claim is based on the rule that an officer present at the scene not only has a duty not to use excessive force, but also to "take reasonable steps to protect the victim of another officer's use of excessive force." Skrtich, 280 F.3d at 1301.

First, Officer Williams is no longer a party in this case, and this court makes no determination regarding the propriety of Williams' conduct during the May 16 incident. Second, this court's conclusion regarding the liability of Officers Bryant, Butler, and Gilley for their alleged failure to intervene is based on the reasonableness of their actions.

The facts show that it took very little time for the officers to respond to the call for assistance (the evidence shows that it occurred within one minute), and it also took apparently little time for the officers to subdue the plaintiff with handcuffs and leg shackles. Even assuming that Williams did in fact punch the

12

plaintiff, the court concludes that such action is insufficient to impose liability on officers Bryant, Butler, and Gilley. The plaintiff testified that he was punched in quick succession not more than two times, both of which occurred while Williams was lying across the plaintiff's back. At the same time the plaintiff was allegedly being punched, Officer Bryant was lying across the plaintiff's legs to allow Officers Butler and Gilley to place the leg shackles on the plaintiff's ankles.

The officers were not merely observing the take down and able to respond or intervene at the first sign of improper conduct. The officers were actively engaged in performing their own duties. Moreover, it is unclear whether the defendants were even aware that the plaintiff was being punched. There was apparently no warning and the entire episode lasted only as long as it takes to administer two quick punches. Any failure to intervene was not due to the failure to take reasonable steps to protect the victim. Rather, the evidence in this case shows that the defendants likely could not have intervened since the alleged punching occurred over such a short time, that they were themselves engaged in restraining the defendant, and that they may not have even been aware of the punching until after the fact. It would be manifestly unreasonable to require intervention when the officers could not reasonably have been expected to be aware of an incident that required their intercession. Therefore, the defendants' conduct regarding the

alleged punching was reasonable under the circumstances, and they did not fail in their duty to intervene.

Thus, summary judgment in favor of the defendants is warranted. Also, because this court has concluded that the defendants' conduct did not rise to the level of excessive force, it is unnecessary to reach the remaining claim of conspiracy.

CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment [Doc. No. 36-1] is GRANTED. Additionally, the claims against defendants Boole and Williams are dismissed without prejudice for failure to perfect service of process. Because summary judgment is granted in favor of the defendants, the plaintiff's motion [Doc. No. 38] is hereby DISMISSED as moot.

SO ORDERED, this 16th day of January, 2007.

Robert L. Vining, Jr.
ROBERT L. VINING, JR.
Senior United States District Judge